EDWARD S. SMITH, Circuit Judge.
 

 This is an appeal from a final decision of the United States Claims Court,
 
 [1]
 
 holding that the Department of the Interior’s Bureau of Land Management (BLM) properly charged appellant Sohio Transportation Company (Sohio) costs, including those for an environmental impact statement (EIS), in processing Sohio’s application for an oil pipeline right-of-way over federal land. We affirm.
 

 Issue
 

 Sohio appeals only one issue to this court: whether the regulations which the Secretary of the Interior (Secretary) promulgated for determining the fees to charge applicants for BLM’s costs in processing certain right-of-way applications, are invalid for having exceeded the Secretary’s authority.
 

 Background
 

 A summary of the facts material to this appeal are as follows:
 
 [2]
 
 Sohio, a wholly owned subsidiary of Standard Oil Company of Ohio, filed an application with BLM for a right-of-way permit to extend a crude oil pipeline across approximately 17 miles of federal land.
 
 [3]
 
 The pipeline was to carry Alaskan and other crude oil from southern California to Texas. The application, filed on September 11, 1975, contained a $2,000 check payable to the “Bureau of Land Management, Department of the Interior.”
 

 
 *501
 
 On February 11, 1976, BLM informed Sohio that an EIS would need to be prepared as a statutory requirement for the permit,
 
 [4]
 
 bringing the estimated cost of the permit to $3.4 million. Sohio paid BLM $57,206.34 on March 23, 1976, as the first installment to process the application. Then, on September 29,1976, Sohio and the Secretary signed an agreement which contained detailed reimbursement clauses. This agreement culminated over 2 years of meetings, telephone conversations, and letters between Sohio and the Secretary, fleshing out the terms of the agreement. The agreement included an attached schedule A, breaking out the projected EIS costs: (1) salaries for 38 permanent positions and 8 man-years of temporary personnel—$1,200,000; (2) Corps of Engineers reimbursement—$365,000; (3) consultant contracts—$430,000; (4) space—$105,000; (5) other costs such as printing, travel— $400,000. The full text of the agreement itself we have set forth as an appendix to this opinion, with pertinent portions highlighted.
 

 BLM completed the final EIS in 1977, and Interior issued the permit on July 6, 1978, subsequent to Sohio’s paying $2,665,-698.93 between March 23, 1976, and March 31, 1978, for application processing costs. Sohio paid these costs without protest.
 

 In December 1979 Sohio did, pursuant to the agreement, file a Notice of Disputed Claims with the BLM Sacramento office. In 1981 BLM refunded over $174,000 to Sohio, mostly for improperly charged markup amounts. Sohio appealed this refund to the Secretary, who refused any further processing costs refund. Sohio then brought an action in the U.S. Court of Claims on March 12, 1982, seeking the difference between the costs paid to and amount refunded by
 
 BLM—i.e.,
 
 $2,494,-766.70.
 
 [5]
 
 The court denied Sohio’s and granted the Government's motion for summary judgment and dismissed the complaint.
 

 Discussion
 

 We must confine ourselves to the single issue here on appeal: the validity or invalidity of the regulations. There lurks a “shadow” issue in this case—whether BLM’s nearly $2.5 million charge to Sohio for the EIS was excessive. Sohio has not been shy about raising the court’s suspicions that the EIS charge—which apparently involved research on the environmental impact of crude oil transportation from Alaska to the lower 48 states, where a permit for only a 17-mile stretch of federal land somewhere between California and Texas was sought—may have been unreasonable. However, not only is the reasonableness of the EIS charge not the matter appealed to this court, but the court below rejected the issue as untimely raised.
 
 [6]
 
 Hence we discuss only the Secretary’s statutory authority for the reimbursement regulations and whether those regulations are invalid for having exceeded that authority.
 

 The regulations at issue state in pertinent part:
 
 [7]
 

 § 2802.1-2 Reimbursement of costs.
 

 (a)(1) An applicant for a right-of-way or a permit incident to a right-of-way
 
 shall reimburse the United States for administrative and other costs incurred by the United States in processing the application, including the preparation of reports and statements pursuant to the National Environmental Policy Act
 
 (42 U.S.C. 4321-4347), before the right-of-way or permit will be issued
 
 *502
 
 under the regulations of this part. [Emphasis supplied.]
 

 s|e 4c sjc sfc * sfs
 

 (4) When an application is received, the authorized officer shall estimate the costs expected to be incurred by the United States in processing the application. If, in the judgment of the authorized officer, such costs will exceed the paragraph (a)(3) of this section, payment by an amount which is greater than the cost of maintaining actual cost records for the application review process, the authorized officer shall require the applicant to make periodic payments of the estimated reimbursable costs prior to the incurrence of such costs by the United States. Such payments may be refunded or adjusted as provided by paragraph (a)(8) of this section.
 

 (5) Prior to the issuance of any authorization for a right-of-way or permit incident to a right-of-way, the applicant will be required to pay additional amounts to the extent the costs of the United States have exceeded the payments required by paragraphs (a)(3) and (4) of this section.
 

 He >}: * sjs * *
 

 (9) The authorized officer shall on request give an applicant or a prospective applicant an estimate, based on the best available cost information, of the costs which would be incurred by the United States in processing an application. However, reimbursement will not be limited to the estimate of the authorized officer if actual costs exceed the projected estimate.
 

 These regulations parallel the reimbursement clause of the specific statute applying to Sohio’s right-of-way application, the Mineral Leasing Act (MLA) of 1920:
 
 [8]
 
 “The applicant for a right-of-way or permit shall reimburse the United States for administrative and other costs incurred in processing the application.” In addition, general authority for federal agencies to seek reimbursement of costs such as permits is found in the Independent Offices Appropriation Act (IOAA):
 
 [9]
 

 It is the sense of the Congress that any * * * license, permit * * * issued by any Federal agency * * * shall be selfsus-taining to the full extent possible, and the head of each Federal agency is authorized by regulation * * * to prescribe there for such fee, charge, or price, if any, as he shall determine
 
 * * * to be fair and equitable taking into consideration direct and indirect cost to the Government, value to the recipient, public policy or interest served, and other pertinent facts * * *.
 
 [Emphasis supplied.]
 

 It is uncontested here that under these two statutes the Secretary is required to issue regulations, which he did,
 
 [10]
 
 and empowered in some manner to charge for an EIS.
 
 [11]
 
 Sohio’s contention is that the Secretary exceeded his authority in issuing the above regulations because he failed to consider and articulate the “fair and equitable” factors, including “value to the recipient” required under the IOAA, and to state which costs are to be reimbursed and the basis upon which they are to be calculated. In support of its position Sohio relies heavily upon a Tenth Circuit decision,
 
 Nevada Power Co. v.
 
 Watt,
 
 [12]
 
 which invalidated identical Interior regulations for not
 
 *503
 
 adequately considering statutory cost factors.
 
 Nevada Power
 
 involved utility right-of-way applications arising, with one exception, under the Federal Land Policy and Management Act of 1976 (FLPMA).
 
 [13]
 

 FLPMA contains cost reimbursement clauses far more detailed than those under either the MLA or IOAA. FLPMA directs the Secretary to promulgate regulations for a right-of-way applicant to reimburse the United States for “all
 
 reasonable
 
 administrative and other costs incurred in processing an application” (emphasis supplied).
 
 [14]
 
 More importantly, FLPMA specifies that:
 
 [15]
 

 As used in this section “reasonable costs” include, but are not limited to, the costs of * * * environmental impact statements * * *. In determining whether costs are reasonable under this section, the Secretary may take into consideration actual costs (exclusive of management overhead), the monetary value of the rights or privileges sought by the applicant, the efficiency to the government processing involved, that portion of the cost incurred for the benefit of the general public interest rather than for the exclusive benefit of the applicant, the public service provided, and other factors relevant to determining the reasonableness of the costs.
 

 In
 
 Nevada Power
 
 the Tenth Circuit analyzed in detail the extensive FLPMA legislative history, including quotations from the Conference Committee discussion at which the Senators and Congressmen tackled the problem on the degree to which applicants should be required to bear EIS costs, where admittedly those costs can be great.
 
 [16]
 
 The Conference Committee reached an imperfect solution to the problem, which was insertion of the term “reasonable” and the factors quoted above into the FLPMA. In so doing the Committee was aware of recent (1974) companion Supreme Court cases interpreting the IOAA to provide agencies proper constitutional authority to charge fees, so long as such fees reflect the costs of a special benefit conferred upon an “identifiable recipient,”
 
 [17]
 
 as opposed to expenditures for the public interest. The latter such expenditures would constitute an unconstitutional delegation of Congress’ exclusive power to tax.
 
 [18]
 

 Nevada Power,
 
 while highly instructive, is neither completely on point nor precedent in this court. Sohio relies upon that portion of the case arising under FLPMA, whereas that statute is not involved in this case. In fact, when the Tenth Circuit in
 
 Nevada Power
 
 addressed the right-of-way reimbursement problem in the case of a utility, Colorado-Ute, whose application was granted
 
 prior
 
 to enactment of FLPMA—such that the basis for the same reimbursement regulations rested merely upon the IOAA
 
 [19]
 
 —that court held:
 
 [20]
 

 
 *504
 
 Unlike FLPMA, the IOAA provides little legislative history relevant to cost reimbursement. Other than the statutory command that fees charged be “fair and equitable,” 31 U.S.C. § 483a, the IOAA reveals none of the evidence of Congressional intent that we found so compelling in construing FLPMA § 304(b). Colorado-Ute’s only substantive argument is that the regulations were invalid under
 
 National Cable
 
 and
 
 New England Power Co.
 

 [21]
 

 * * * Interior may, consonant with
 
 National Cable
 
 and
 
 New England Power Co.,
 
 recover the full costs of services provided to Colorado-Ute as an identifiable beneficiary. These costs may include the full expenses of an EIS triggered under NEPA by Colorado-Ute’s application. [Footnote omitted.]
 

 The lower court found this aspect of
 
 Nevada Power
 
 persuasive in this case.
 
 [22]
 
 Without the enumerated cost factors and extensive legislative history of FLPMA, Sohio, as Colorado-Ute, is left with the IOAA, as interpreted by the Supreme Court, plus the sparse MLA.
 
 [23]
 
 With these constraints in
 
 mind—i.e.,
 
 reimbursement of what the IOAA terms “fair and equitable” costs, so long as these reflect value conferred upon an identifiable recipient—it is difficult to see how the regulations cited above exceed these constraints. True, the regulations do not parrot the words “fair and equitable” or “value to the recipient,” but this deficiency is mitigated in at least four ways. First, the costs relate only to the processing of the application, which task by its nature occurs only once and provides value to an identifiable recipient.
 
 [24]
 
 Secondly, the regulations require or allow BLM to estimate in advance the costs expected to be incurred in processing the application, so that the applicant need not be surprised. Thirdly, in Sohio’s case, extensive negotiations between Sohio and the Secretary, culminating in the agreement appended to this opinion, certainly gave Sohio every opportunity to learn of and object to the costs to be charged. As this court’s predecessor has stated, the purpose behind promulgation of the MLA regulations is “to give applicants and permittees the opportunity to be heard before the amount of reimbursement is fixed and advance notice of the expenses they will incur if their application is granted.”
 
 [25]
 
 Sohio certainly had such opportunity to be heard and advance notice. Finally, where a regulation does not clearly contradict or exceed the scope of the statute, the administrative interpretation is entitled to deference.
 
 [26]
 

 Sohio nevertheless contends that the regulations should and can, as a practical matter, be amplified. Interior has managed to do this, Sohio points out, as required by
 
 Nevada Power,
 
 by issuing “Interim Guidelines for FLPMA Right-of-Way Cost Recovery.” These interim guidelines are to serve Interior until it can revise its regulations to meet the
 
 Nevada Power
 
 test. While it is instructive to know that Interior is working to improve its FLPMA reimbursement regulations, FLPMA and that aspect of
 
 Nevada Power,
 
 as we have discussed, do not control here.
 

 Accordingly, we hold that the Secretary has not exceeded his authority under the IOAA and MLA in promulgating the right-
 

 
 *505
 
 of-way reimbursement regulations here at issue, and we affirm the lower court’s decision.
 

 AFFIRMED.
 

 APPENDIX
 

 AGREEMENT
 

 Between
 

 THE DEPARTMENT OF THE INTERIOR OF THE UNITED STATES OF AMERICA,
 

 And
 

 SOHIO TRANSPORTATION COMPANY
 

 This AGREEMENT is entered into on this 29 day of September, 1976, by THE UNITED STATES OF AMERICA, Party of the First Part, acting through the SECRETARY OF THE INTERIOR (“the Secretary”), and SOHIO TRANSPORTATION COMPANY, Party of the Second Part (“Applicant”).
 

 WHEREAS, by application for oil pipeline right-of-way No. CA 3242, dated September 11, 1975, filed with the DEPARTMENT OF THE INTERIOR (“the Department”), Applicant applied for a right-of-way across Federal lands for a crude oil pipeline that will constitute a portion of a major new proposed common carrier crude oil pipeline running from San Pedro Bay in California to the vicinity of Midland, Texas; and
 

 WHEREAS, El Paso Natural Gas Company has heretofore filed applications Nos. NM 26713 and A 9140 with the Department, each dated July 30, 1975, to permit the operation of segments of such pipeline through Federal lands; and
 

 WHEREAS, the applications filed by Applicant and by El Paso Natural Gas Company are hereinafter referred to as the “applications.”
 

 NOW, THEREFORE, in consideration of the covenants and provisions herein contained, United States and the Applicant agree as follows:
 

 (A) Applicant shall reimburse the United States
 
 for all administrative costs and others costs, including direct costs and incremental direct costs, presently estimated per attached Schedule A incurred by the Department for processing the application,
 
 PROVIDED, that the Department shall endeavor to avoid unnecessary employment of personnel and needless expenditure of funds, PROVIDED, that copies of all data, information, documents and publications, as requested developed or acquired by the Department and for which the Department is reimbursed shall be furnished to the Applicant upon completion or termination of the processing period for the applications unless the furnishing of copies of such data, information, documents and publications, to the Applicant would constitute a violation of Federal law or regulations. The Applicant shall reimburse the Department for all property directly purchased by the Department for the processing of these applications^] Insofar as any property purchased by the Department for this purpose may have a useful life extending beyond the processing period of these applications, Applicant shall reimburse the Department for such property
 
 only to the extent of the ratable share of the total useful life of such property actually expended in the processing of these applies tions.
 

 (B) Applicant acknowledges that the Department has employed or may employ one or more independent consultants, contractors and subcontractors and also has utilized and may utilize personnel and services of other agencies
 
 to assist in the preparation of an environmental impact statement relating to the applications.
 
 The Secretary shall notify Applicant in writing of the employment of such consultants, contractors and subcontractors and shall inform the Applicant in writing of the purpose of such employment, the scope of the work to be undertaken, the duration of the employment and the estimated cost thereof; PROVIDED, HOWEVER, this notice requirement shall not limit the authority of the Secretary to enter into agreements with consultants, contractors or subcontractors. Costs incurred by the Depart
 
 *506
 
 ment in connection with the employment of consultants, contractors and services of other agencies shall be included in the costs for which the Department is to be reimbursed by Applicant under the provisions of Paragraph (A) hereof.
 

 (C) Payment of the costs referred to in Paragraph (A) above shall be made by the Applicant for each quarter ending on the last day of September, December, March and June. Such payments shall be made according to the provisions of Paragraph (D) below and shall cover such reasonable costs as are projected to be incurred by the Department in such quarter
 
 in processing the applications.
 

 (D) The Department shall promptly advise the applicant of all changes to or new major cost items or activities for which the Department is to be reimbursed under the terms of this agreement. The Department shall, promptly after the end of each quarter,
 
 provide Applicant with an itemized statement of expenses
 
 incurred by the Department during the preceding quarter in processing the application. Within 30 days following each billing applicant shall pay all billed reimbursable costs to be incurred in the then-current quarter, together with all costs that are reimbursable in accordance with Paragraph (A) above that were incurred by the Department in the preceding quarter and that were not covered by the advance payments made for such quarter.
 
 Applicant may question or seek an explanation of any items which appear to be nonrelated to the processing of the applicant or excessive in cost. If any such question is not resolved in an informal manner, Applicant shall have the right to pursue the matter subsequently under the provisions of Paragraphs (E), (G), and (H) hereof.
 
 Any monies from advance payments which have not been expended at the end of each quarter shall be applied to any payments due hereunder by the Applicant to the Department.
 

 (E)
 
 Ten months after
 
 execution of this agreement, and at
 
 6-month intervals thereafter,
 
 and
 
 upon the completion by the Department of the final environmental impact statement
 
 relating to these applications,
 
 Applicant shall have the right to conduct, at its own expense, a reasonable audit
 
 by auditors or accountants designated by the Applicant, of the books, records and documents of the Department, including its audits of independent consultants, contractors or subcontractors. PROVIDED, HOWEVER, that written notice of a desire to conduct such audit must be given the Secretary at least 30 days prior to such audit; and PROVIDED FURTHER, that such audit shall be completed within three hundred sixty (360) days.
 

 (F) Nothing herein shall be deemed to require the Department, its bureaus or offices, or its independent consultants, contractors and subcontractors to maintain books, records or documents other than those usually maintained by them,
 
 PROVIDED that such books, records and documents reasonably segregate and identify the costs for which reimbursement is required hereunder,
 
 and PROVIDED FURTHER, that, any such costs relating to the West Coast port and terminal facilities shall be recorded and identified separately from those relating to the remainder of the facilities that are the subject of the applications. Such books, records and documents shall be preserved or caused to be preserved for a period of at least two (2) years after the Department completes the final environmental impact statement relating to these applications. The auditors or accountants designated by Applicant shall have reasonable access to, and the right to copy, at their expense, all such books, records and documents, including all audit reports prepared by or furnished to the Department, together with supporting documents in the possession of the Department, concerning agreements with other agencies employed by the Department and with its independent consultants, contractors and subcontractors, which result in costs for which reimbursement is required hereunder.
 

 (G) If, after auditing the Department, Applicant decides to dispute any item of any statement that has been rendered, Ap
 
 *507
 
 plicant shall give the Secretary or his representative written notice of each item that is disputed, accompanied by a detailed explanation of its objection. Within thirty (30) days after notice of a disputed item or after notice of the completion of the audit, as the case may be, the Secretary or his representative and Applicant shall meet to discuss, and attempt to resolve, all items which are disputed or which have not been resolved by the audit. If at that time they are unable to resolve all such items, Applicant may appeal any unresolved items to the Secretary. Any decision of the Secretary, with respect to any such appeal, shall constitute the final administrative decision of the Department. Any item that Applicant successfully disputes or appeals shall be refunded to the Applicant. In addition, if the audit discloses that the Applicant has overpaid the Department, all overpayments shall be promptly refunded to the Applicant.
 

 (H) This Agreement is made in accordance with and subject to the provisions of Section 28(1) of P.L. 95-153, and the implementing regulation, 43 CFR 2202.1-2 (1975).
 

 IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first above written.
 

 UNITED STATES OF AMERICA
 

 By: /s/ Kent Frizzell
 

 SOHIO TRANSPORTATION COMPANY
 

 By: /s/ Fred Garibaldi
 

 [Emphasis supplied.]
 

 AMENDMENT TO AGREEMENT
 

 The Agreement between the Department of the Interior of the United States and SOHIO Transportation Company, entered into September 29,1976, is hereby amended to change the term thirty (30) in Paragraph G to ninety (90).
 

 /s/ John E. Bifillegible]
 

 United States of America
 

 Bureau of Land Management
 

 Acting California State Director
 

 /s/ Fred Garibaldi
 

 SOHIO Transportation Company
 

 F.G. Garibaldi, President
 

 FEB 28 1980
 

 Date
 

 [1]
 

 .
 
 Sohio Transp. Co. v. United States,
 
 5 Cl.Ct. 620 (Cl.Ct.1984).
 

 [2]
 

 . A complete statement of the facts is contained in the Claims Court opinion by Judge Yock.
 
 Cf. Sohio Transp.,
 
 5 Cl.Ct. at 622-24.
 

 [3]
 

 . Pursuant to § 28 of the Mineral Leasing Act (MLA) of 1920, as amended, 30 U.S.C. § 185 (1976).
 

 [4]
 

 .
 
 See
 
 § 102(2)(c) of the National Environmental Policy Act of 1969 (codified as amended at 42 U.S.C. § 4332(2)(C) (1976)) (NEPA).
 

 [5]
 

 . The case was transferred to the U.S. Claims Court on October 1, 1982.
 
 See
 
 Federal Courts Improvement Act, 28 U.S.C. § 171 (1982).
 

 [6]
 

 .
 
 Sohio Transp. Co.,
 
 5 Cl.Ct. at 640-41. The Claims Court held that Sohio’s “claim” for excessive costs associated with BLM’s preparation of the EIS was neither properly raised before that court nor raised at all during the administrative appeal process. Sohio has not contested this holding.
 

 [7]
 

 . 43 C.F.R. § 2802.1-2 (1975). The agreement between Sohio and the Secretary, set forth in the appendix to this opinion, supplements the regulations.
 

 [8]
 

 . 30 U.S.C. § 185(l) (1976).
 

 [9]
 

 . 31 U.S.C. § 483a (1976), recodified at 31 U.S.C. § 9701 (1982).
 

 [10]
 

 .
 
 Cf. Alyeska Pipeline Serv. Co. v. United States,
 
 624 F.2d 1005, 224 Ct.Cl. 240 (1980) ($12.3 million fee for Alaska pipeline refunded, where Secretary acted under MLA and IOAA without having promulgated any reimbursement regulations and where in any event costs were incurred prior to 1973 MLA reimbursement amendment).
 

 [11]
 

 .
 
 See, e.g., Mississippi Power & Light v. U.S. Nuclear Regulatory Comm'n (NRC),
 
 601 F.2d 223 (5th Cir.1979),
 
 cert, denied,
 
 444 U.S. 1102, 100 S.Ct. 1066, 62 L.Ed.2d 787 (1980) (NRC empowered under IOAA to charge for EIS because EIS is prerequisite for license and part of cost of providing special benefit to licensee).
 

 [12]
 

 .
 
 Nevada Power Co. v. Watt,
 
 711 F.2d 913 (10th Cir.1983).
 

 [13]
 

 . 43 U.S.C. §§ 1701
 
 et seq.
 
 (1976).
 

 [14]
 

 .
 
 Id.
 
 § 1764(g).
 

 [15]
 

 .
 
 Id.
 
 § 1734(b).
 

 [16]
 

 .
 
 See Nevada Power,
 
 711 F.2d at 921-25. The following excerpt is illustrative of the difficulties facing the Conference Committee:
 

 “ ‘Senator Haskell.
 
 Let’s assume a utility company asked to locate on public lands. This requires an EIS. Under your
 
 [Senator McClure’s]
 
 theory
 
 [EIS protects public interest],
 
 would you have the utility company pay for the EIS or not?
 

 " 'Senator McClure.
 
 I think not.
 

 " 'Senator Haskell.
 
 Then we disagree.
 

 "‘Congressman Santini. I don’t know if we will be able to reconcile the differences of the two concepts____’”
 

 Id.
 
 at 923, citing unpublished mark-up transcript (emphasis added by Tenth Circuit).
 
 See also
 
 H.R.Conf.Rep. No. 1724, 94th Cong., 2d Sess. 61,
 
 reprinted in
 
 1976 U.S.CODE CONG. & AD.NEWS 6175, 6228, 6233.
 

 [17]
 

 .
 
 FPC v. New England Power Co.,
 
 415 U.S. 345, 349, 351, 94 S.Ct. 1151, 1154, 1155, 39 L.Ed.2d 383 (1974).
 
 See also National Cable Television Ass’n v. United States,
 
 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974).
 

 [18]
 

 . U.S. CONST, art. I, § 8, cl. 1.
 

 [19]
 

 . Another statute, the Public Land Administration Act, was involved, but the court found the IOAA dispositive.
 
 Nevada Power,
 
 711 F.2d at 933.
 

 [20]
 

 .
 
 Id.
 

 [21]
 

 .
 
 See
 
 note 17
 
 supra.
 

 [22]
 

 .
 
 Sohio Trartsp. Co.,
 
 5 Cl.Ct. at 633.
 

 [23]
 

 .
 
 See id.
 
 at 632-33 for further discussion of MLA and legislative history, and
 
 Alyeska Pipeline Serv. Co.,
 
 624 F.2d at 1012-13. We note that in a footnote the
 
 Alyeska Pipeline
 
 court opined that the regulations here at issue would satisfy the statutes.
 
 Id.,
 
 624 F.2d at 1010 n. 5.
 

 [24]
 

 .
 
 Cf. National Cable Television Ass’n,
 
 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 and
 
 FPC,
 
 415 U.S. 345, 94 S.Ct. 1151, where annual fees were the problem;
 
 Electronic Indus. Ass’n v. FCC,
 
 554 F.2d 1109 (D.C.Cir.1976) (follow-up regarding same annual fees);
 
 Diapulse Corp. of America v. Food & Drug Admin.,
 
 500 F.2d 75 (2d Cir.1974) (concerning Freedom of Information Act search fees).
 
 See also Yosemite Park & Curry Co. v. United States,
 
 686 F.2d 925, 231 Ct.Cl. 393 (1982) (holding electricity charges to be reasonable and discussing in detail IOAA and
 
 National Cable
 
 cases).
 

 [25]
 

 .
 
 Alyesk Pipeline Serv. Co.,
 
 624 F.2d at 1018.
 

 [26]
 

 .
 
 See, e.g., Nevada Power,
 
 711 F.2d at 920.