CASCADE DEVELOPMENT CO., INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 342–86L.

United States Claims Court.

April 22, 1988.

Roland L. Skala, Yakima, Wash., for plaintiff.

Glenn R. Goodsell, Washington, D.C., for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This action came before the court on defendant's motion to dismiss for lack of jurisdiction or in the alternative, motion for summary judgment. In this case it was unnecessary for the court to consider any matter outside the pleadings to pass on what the court considers to be a purely jurisdictional issue. USCCR 12(c). Therefore, the court addressed the judgment on the pleadings as a motion to dismiss. Defendant contended that plaintiff's claim is not ripe for review because plaintiff has failed to exhaust its available administrative remedies. Plaintiff asserted that it would be an exercise in futility to require it to exhaust its administrative remedies because the agency's decision to deny its request has been unequivocally predetermined.

## FACTS

Plaintiff, Cascade Development Company, Inc., is the owner of patented mining claims located in Sections 17, 18, 19, 20 and 21 of Township 24 North, Range 13 E.W.M. King County, Washington, commonly known as the Dutch Miller Mine. The mine, located eight miles from an accessible road in a remote high area, is a privately held in-holding surrounded by a national forest. Access to this property has been a problem for many years due to the mine's location.

In August 1956, plaintiff leased Dutch Miller Mine to Cougar Development Corporation (Cougar) to mine the property. In the summer of 1967, Cougar contacted the United States Forest Service to request permission to construct a road through Snoqualmie National Forest to the mine. After considering various means of access, the Forest Service concluded that a road was the only reasonable means of access to remove the estimated tonnage of ore. During the winter of 1967–1968, Cougar submitted a road design proposal and in May of 1968 was informed by the Forest Service that a permit for construction of the road would be issued. In 1969, following issuance of the permit and after conservation groups opposed to the road appealed the issuance of the permit to the Secretary of Agriculture the Chief of the Forest Service, for reasons unknown to the court, cancelled the permit. The Forest Service then undertook to widen an existing trail in the Middle Fork of Snoqualmie River Valley to accommodate an experimental two-wheeled vehicle called the gyro-carrier. Work on the trail was halted in May 1970 due to another suit filed by conservation groups seeking an injunction to void the existing trail reconstruction agreement and to prevent the issuance of any permit for the operation of motorized vehicles in that portion of Snoqualmie River Valley. The Justice Department, for reasons known but to itself, advised the Forest Service to abandon any further work on the trail pending

outcome of the litigation. Cougar intervened when it became apparent that the Forest Service was not going to honor its trail widening agreement. The suit was dismissed in December 1971 when plaintiff determined that the gyro-carrier concept would not work. Cougar's further attempts at the local and regional levels of the Forest Service to obtain road construction permits were adamantly rejected. As a result, the Cascade–Cougar mine lease was terminated and Cascade sought again to gain permission to construct a road. Its efforts were likewise fruitless.

On July 12, 1976, the Alpine Lakes Management Act (Alpine Act) was enacted, designating the Snoqualmie National Forest, as well as other national forests as wilderness areas. Alpine Lakes Area Management Act of 1976, Pub.L. No. 94–357, 90 Stat. 905 (1976). Section 4(a) of the Alpine Act specifically directed the Secretary of Agriculture to acquire nonfederal lands in both Wilderness and Intended Wilderness areas with "donated or appropriated funds, by gift, exchange, or otherwise." The wilderness area is the core of the wilderness, and is surrounded by the intended wilderness. Lands located in the intended wilderness were to be acquired by the Secretary within three years of the enactment of the Alpine Act. If the Secretary failed to act by July 12, 1979, the owners of the land within the intended wilderness could bring suit in the local United States district court to compel acquisition. The Alpine Act does not contain a similar provision for privately held in-holdings in the wilderness area. The Dutch Miller Mine lies within the wilderness area. The Alpine Lakes Area Management Act actually permitted defendant to refuse to even purchase plaintiff's property so long as the necessary funds were not appropriated by the Congress and made available for that purpose. 16 U.S.C. § 1134(c) (1982). Defendant could retain absolute domain over plaintiff by refusing to request an appropriation of sufficient funds to purchase, condemn or take the land and by refusing to permit plaintiff adequate access to its in-holding.

In April 1984, Don Burkholder, an officer and shareholder of plaintiff, spoke with J.D. McWilliams, Regional Director of the Forest Service. Mr. McWilliams, according to plaintiff, stated that defendant would not grant permission to build a roadway into the mine and that permission would not be granted short of an act of Congress. In May 1984, Mr. Burkholder met with David O'Dahl, another representative of the Forest Service, and was informed that defendant was required by law to grant plaintiff access to its property. Mr. O'Dahl allegedly stated, however, that should plaintiff apply for a road permit, defendant would initiate condemnation proceedings within three days of the application. On June 19, 1985, plaintiff's attorney, Roland L. Skala wrote to the Forest Service District Ranger, Michael F. Cooley and requested permission to construct an access road. Mr. Cooley acknowledged plaintiff's statutory right to adequate access but advised Mr. Skala that plaintiff would have to submit a completed permit application and a copy of plaintiff's mine plan before any permit could be considered. Mr. Cooley also stated that defendant intended to condemn the property. If the statements attributed to Messrs. McWilliams, O'Dahl and Cooley are found at trial to have been made, with the knowledge that the United States Forest Service had no intent, or even capability, of purchasing or condemning plaintiff's property, they are not only guilty of pernicious misrepresentation but also very probably guilty of violating the Code of Ethical Conduct for federal employees. Exec. Order No. 11222, 3 C.F.R. 306 (1964–1965). It becomes very easy to see why plaintiff believes that the United States Forest Service's permit-seeking process is no more than a sham. Since then, plaintiff has not submitted a permit application or mine plan.

■ Plaintiff thereafter initiated suit in the United States District Court for the Western District of Washington requesting a writ of mandamus to compel the Secretary of Agriculture to purchase the property and for declaratory judgment. The district court dismissed the suit without prejudice because it determined that plaintiff's cause of action should be before the United

States Claims Court. *Cascade Dev. v. Block*, No. C85–1990C (W.D.Wash. Oct. 3, 1985). Plaintiff then filed suit in the United States Claims Court on June 2, 1986. To the extent that plaintiff's claim is for a taking without just compensation brought under the fifth amendment of the Constitution of the United States and 28 U.S.C. § 1491, the action of the district court was correct. If, however, plaintiff seeks mandamus and declaratory judgment, its initial filing in the district court was proper; this court is without authority to issue an order directing the United States Forest Service to purchase or condemn plaintiff's property. After briefing and argument, the court believes the former to be the case. Subsequently, the court dismissed the suit, concluding that it was time-barred by the statute of limitations. *Cascade Dev. v. United States*, 12 Cl.Ct. 587 (1987). The United States Court of Appeals for the Federal Circuit vacated and remanded the suit to the court for further proceedings. *Cascade Dev. v. United States*, 838 F.2d 1222 (Fed.Cir.1988).

## DISCUSSION

■ The issue before this court is whether adjudication of plaintiff's claim is premature due to failure to exhaust the available administrative remedies.

Under the doctrine of exhaustion of administrative remedies, judicial review of a claim is inappropriate until the prescribed administrative remedy has been exhausted. *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938)). This doctrine is not a strict jurisdictional requirement, but rather a flexible concept, subject to exception where pursuit of administrative remedies would be a futile gesture. *Weinberger v. Wiesenfeld*, 420 U.S. 636, 641, n. 8, 95 S.Ct. 1225, 1230, n. 8, 43 L.Ed.2d 514 (1975); *Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496, 499 (9th Cir.1980); *Izaak Walton League v. Costle*, 571 F.2d 359, 363 (7th Cir.1978), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 130 (1978); *Appalachian Regional Hosps.*

*v. United States*, 217 Ct.Cl. 1, 15, 576 F.2d 858, 865 (1978); *Pacific Coast Medical Enters. v. United States*, 3 Cl.Ct. 140, 144 (1983). Exhaustion of administrative remedies has also been excused where there is objective evidence of administrative bias. *White Mountain Apache Tribe v. Hodel*, 840 F.2d 675 (9th Cir.1988).

Defendant contended that until plaintiff filed a road permit application and mine plan, and the application for the permit is rejected by the final decision-maker within the Department of Agriculture, that its taking claim is not ripe for review in this court. The court reframes the issue: is the application by plaintiff to defendant for a road construction permit a necessary procedure or merely a futile gesture, the only exception to the general rule argued by plaintiff? Plaintiff did not argue administrative bias by defendant.

The purpose of administrative remedies is to prevent the interruption of the administrative process, to allow an agency to exercise its expertise in an area under its jurisdiction and to permit the agency to develop a comprehensive factual record. *McKart*, 395 U.S. at 193–195, 89 S.Ct. at 1662–63; *Aleknagik*, 648 F.2d at 499; *Sohio Transp. Co. v. United States*, 5 Cl.Ct. 620, 638–39 (1984), *aff'd*, 766 F.2d 499 (Fed. Cir.1985).

Defendant contended that until plaintiff pursued its complete administrative remedy the factual record is incomplete and it is inappropriate for this court to "second guess" defendant and its expertise under the regulations governing its conduct with respect to providing access to plaintiff's mine property. Defendant based its argument upon the intent of Congress in the Alpine Act to have the Forest Service purchase and manage properties in the wilderness areas, upon public policies of environmental impact in wilderness, and upon agency statements that a permit application was a precursor to a final administrative decision. Plaintiff countered that defendant's response to repeated requests for access to the mine by plaintiff and its lessee, Cougar, since 1969 provide ample fac-

tual record of defendant's anti-road construction stance precluding haulage access through Snoqualmie National Forest, and later, the Alpine Lakes Wilderness Area. Plaintiff asserted that the factual record clearly reveals that application for a road permit is a futile gesture and, therefore, is unnecessary before review by this court. Plaintiff failed, however, to establish that the representations made to it were akin to a final determination by the ultimate agency decision-maker. Defendant stated the Forest Service's present permitting policy under which it has issued road permits under reasonable conditions in wilderness areas. Defendant avers that roads have been built under those permits and are currently in use. The court concludes that the issuance of a road permit is now possible, though certainly not guaranteed. *Cf. Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). It, therefore, behooves plaintiff to first make proper and complete application for a road permit with the United States Forest Service and to exhaust any administrative remedy through to the final agency decision-maker. The court is of the opinion that the wisest course of action at this time is to dismiss the complaint on the basis that plaintiff has not exhausted its administrative remedies.

### CONCLUSION

Plaintiff must fully exhaust its administrative remedies before this court, under these circumstances, may undertake to review the agency action. The court is convinced upon consideration of the history of this project vis-a-vis the purported new road-permitting policy of the Forest Service that the application for a road construction permit is not a futile gesture. Defendant's motion to dismiss is granted. The Clerk of the court is directed to dismiss the complaint. No costs.

IT IS SO ORDERED.